IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

FILED
UNITED STATES DISTRICT COURT
ALBUQUERQUE, NEW MEXICO

JAN 10 2003

CLERK

FRANKLIN FITZJERRELL, as Personal
Representative of the Estate of PAUL ADAM
FITZJERRELL; TANYA FITZJERRELL, as
Guardian ad Litem acting on behalf of JOHN-
PAUL FITZJERRELL, a minor child,

Plaintiffs,

v.                                                             No. CIV 00-1630 BB/DJS

CITY OF GALLUP, a municipal corporation;
MICHAEL BRANDAU; KENNETH C.
BRANDAU; DANNY ROSS; RON
SILVERSMITH; CALVIN WIGGINS;
JOSEPH GUILLEN; GERALD THOLUND;
LARRY MITCHELL; SIGARMS, INC., a
corporation; and SIG, a corporation, also
known as SCHWEIZERISCHE
INDUSTRIE-GESELLSCHAFT,

Defendants.

## MEMORANDUM OPINION AND ORDER

This matter comes before the Court on motions for summary judgment filed by Defendants Michael Brandau ("Michael") and Kenneth Brandau ("Kenneth") (Docs. 62, 64), as well as a motion to strike many of the exhibits submitted by Plaintiffs (Doc. 70). The Court has considered the submissions and arguments of the parties, as well as the applicable law. Having done so, the Court will GRANT the motion filed by Kenneth, and DENY the motion filed by Michael. The Court will also GRANT in part and DENY in part the motion to strike exhibits. Finally, the Court will decline to retain supplemental jurisdiction over the state-law claims that remain after this opinion is issued,

1

and will dismiss those claims without prejudice.

Initially, the Court notes that counsel for Plaintiffs has requested more than once that this case, filed in federal court, be stayed while Plaintiffs pursue their parallel state-court action. At the last hearing held in this case, in April 2002, this Court ordered Plaintiffs' counsel to file a written motion for stay. (Doc. 90, minutes of hearing) Counsel has to date failed to file such a written motion. Therefore, counsel has waived whatever argument he might have had in favor of such a stay, and the request for stay will be denied.

According to the joint status report submitted by the parties, the two claims still pending against Michael and Kenneth are state-law claims for spoliation of evidence and wrongful death. This Court has supplemental jurisdiction over these claims, in its discretion, since they are closely related to the constitutional denial-of-access-to-the-courts claim that is still pending against the City of Gallup Defendants. *See* 28 U.S.C. § 1367. Michael and Kenneth have moved for summary judgment on all claims pending against them. They each argue that Plaintiffs have failed to produce any evidence tending to show that Paul's death was not self-inflicted, that Michael or Kenneth shot Paul either negligently or deliberately, or that Michael or Kenneth was involved in a cover-up of the real facts surrounding the shooting. In response, Plaintiffs have submitted many pages of exhibits. According to Plaintiffs, these documents generally raise issues of fact as to whether Michael or Kenneth, or both, were involved in some way in shooting Paul, or in covering up what actually happened at the scene of the shooting. Defendants have answered Plaintiffs' response in two ways. First, they maintain the documents submitted by Plaintiffs do not raise a material issue of genuine fact that would allow Plaintiffs to avoid summary judgment. Second, they filed a motion to strike

2

"virtually all" of the exhibits attached to Plaintiffs' response.[1] The Court will address this motion to strike first, because it has critical impact on the summary-judgment motions.[2]

**Motion to Strike:** Defendants have raised a number of objections to Plaintiffs' exhibits, with most of the objections falling into the category of hearsay objections and objections to unsworn statements. The Court agrees with most of these objections. For example, all of Exhibit B consists of unsworn transcripts of interviews conducted by Plaintiffs' investigator, who taped the interviews. These transcripts contain seemingly crucial statements that would appear to raise an issue of fact as

---

[1] While Defendants appear to state that some of Plaintiffs' exhibits are acceptable and may be considered by the Court, they also ask the Court to strike the "Affidavit of Plaintiffs' counsel...along with all attached exhibits...". The Court will therefore treat the motion as a request to strike all exhibits attached to Plaintiffs' response.

[2] As Defendants' motion to strike illustrates, Plaintiffs' response indicates that counsel for Plaintiffs has fundamental misunderstandings concerning the nature of summary-judgment proceedings and the procedure followed in such proceedings. For example, counsel has asked for a hearing on the motions, "so that Plaintiff can subpoena witnesses to present testimony on disputed factual issues." Summary-judgment motions are not decided on the basis of testimony from witnesses, but on the affidavits, excerpts of sworn testimony, answers to interrogatories, and other proper documentary evidence submitted by the parties. F.R.C.P. 56(c). In addition, counsel has asked for permission to submit a 1221-page grand jury transcript as an exhibit, rather than reviewing the transcript himself and excerpting the relevant portions. It is not the Court's responsibility to sift through such a voluminous transcript in search of evidence that might be favorable to Plaintiffs; that is their attorney's job. Also, counsel states that he "reserves the right to submit additional affidavits" under Rule 56(c). Aside from the fact that no such additional affidavits have been submitted, counsel should know that he cannot reserve such a right--he must submit whatever affidavits he has, in response to the motion for summary judgment, or risk having the motion decided in the absence of such affidavits. Finally, counsel has presented an "Attorney's Affidavit" that is not in fact an affidavit, because it is not sworn in any way or stated under penalty of perjury, and is merely a summary of counsel's view of the exhibits submitted to the Court. The Court has treated this "Affidavit" as a brief, even though counsel also submitted a response memorandum. It appears Plaintiffs' counsel would benefit from obtaining training on the subject of summary-judgment procedures and process, which would help him avoid jeopardizing his clients' interests in the future.

to whether Michael actually shot Paul.[3] For some reason, however, Plaintiffs' counsel chose not to submit affidavits, deposition excerpts, or any kind of sworn statements from these witnesses. Instead, he has submitted the transcripts of the investigator's interviews, which are not admissible and may not be considered on summary judgment. *See generally Jeffries v. Kansas*, 147 F.3d 1220, 1224 n. 1 ((10th Cir. 1998) (refusing to consider witness statements that were not in the form of a deposition or sworn affidavit); *see also Steinle v. Warren*, 765 F.2d 95, 100 (7th Cir. 1995) (copy of a transcript of an interview, not signed or sworn, was inadmissible as probative evidence and ineffective to defeat a motion for summary judgment); *Purdy v. Newland*, 1994 WL 601341 n. 1 (6th Cir. unpublished) (agreeing with defendants' contention that transcript of a private investigator's unsworn interviews with four witnesses should not be considered by district court for summary-judgment purposes).

Plaintiffs' counsel also submitted a number of other unsworn statements, summaries of interviews, or transcripts of interviews, including the following: (1) most of Exhibit C, consisting of summaries of interviews with Linda Humphrey, Catherine Turk, Tanya Fitzjerrell, Patricia Mendoza, and Sarah Ortiz; (2) parts of Exhibit F, summaries of interviews with Officer Carver and Lieutenant Wiggins; (3) all of Exhibit G, summaries of interviews with Kim Sowers and Carrie Barry; (4) part of Exhibit J, a summary of an interview with Officer Mitchell; and (5) Exhibit P, which appears to be a summary of an interview with Officer Guillen. None of these statements, summaries, or transcripts are admissible and none will be considered in addressing the motions for

---

[3]These witnesses purportedly heard, on a police scanner the night of the shooting and at the time of the shooting, a call in which the caller asked for help, saying "Help me! I just shot my buddy!"

summary judgment.

After discarding the inadmissible unsworn material, the question remains as to what evidence submitted by Plaintiffs may be considered in addressing Defendants' motions. Plaintiffs' counsel provided no assistance in this regard; his only response to the motion to strike was to request that default judgment be entered against Defendants, for their failure to file a timely answer to the complaint. Even after that request was denied, months ago, Plaintiffs' counsel has failed to submit any argument at all concerning the motion to strike. In the interests of justice, however, the Court has done counsel's work and sifted through the mass of material submitted by Plaintiffs. It appears that the following items can properly be considered for summary judgment purposes: (a) Exhibit A, a transcript of an interview with Michael, performed by investigating officers (although this transcript is also unsworn, it is not hearsay because it is an admission of a party); (b) part of Exhibit C, a memorandum from District Attorney Buffington requesting assistance from the F.B.I. (admissible only for the purpose of showing that he did request such assistance; everything else in the memo is hearsay or speculation); (c) Exhibit D, grand jury testimony of Officer Tholund, who was at the scene of the shooting and testified that the scene did not look right, and that a State Police investigation should be initiated;[4] (d) Exhibit D also, an excerpt from a police report written by Officer Allen, but only to the extent the report contains Officer Allen's personal observations and statements; the double hearsay statements made by Ms. Fitzjerrell will not be considered;[5] (e)

---

[4] *See Arceo v. City of Junction City, Kansas*, 182 F.Supp.2d 1062, 1081 (D.Kan. 2002) (grand jury testimony is sworn testimony similar to affidavit; while not admissible at trial, may be considered for purposes of summary judgment).

[5] *See Miller v. Field*, 35 F.3d 1088, 1091 (6th Cir. 1994) (firsthand observations by police officer, contained in police report, are admissible evidence; but statements made by third parties,

Exhibit E, which appears to be duplicate transcripts of the Michael Brandau interview; (f) portions of Exhibit F, including an excerpt from Officer Allen's police report, in which he relates that no powder-residue test was performed on Michael's hands, and an odor of alcohol emanated from Michael at the police station; an excerpt from Officer White's report, making the same two observations; and another excerpt from Officer Allen's report, indicating that no powder-residue test was performed on the victim; (g) Exhibits H and part of I, duplicates of the White and Allen report excerpts; (h) part of Exhibit I, an excerpt from Officer White's report indicating that the gun was between the victim's legs when officers arrived to investigate the shooting; (i) Exhibit K, grand jury testimony from Officer Sandoval-Soland; (j) Exhibits L and K, reports by OMI investigator Gabriel Espinoza, to the extent the reports contain his personal observations, and excluding all hearsay statements made to Espinoza by third parties such as Detectives Silversmith and Allen, and Dr. Beamsley;[6] (k) Exhibit N, the indictment issued by the grand jury against Michael, and the order dismissing that indictment, to be considered only for purposes of establishing that an indictment and dismissal occurred; (l) Exhibit O, excerpt of police report by Officer Madrid, to the extent it reports his personal observations and statements by Michael; (m) Exhibit Q, transcript of an interview with Defendant Kenneth Brandau, as to any statements made by Kenneth; (n) Exhibit R, grand jury testimony of Lawrence Renner; (o) Exhibit S, grand jury testimony of Sara Ortiz and Lucy Nelson;

---

and related in report, are not); *Parsons v. Honeywell, Inc.*, 929 F.2d 901, 907 (2d Cir. 1991) (same).

[6]This means the Court must ignore, again, potentially significant evidence such as Dr. Beamsley's statement to Mr. Espinoza that the victim's ETOH level, or level of alcohol in his blood at the time of the shooting, "came back a 169" (potentially twice the legal driving limit of .08). In the future, counsel for Plaintiffs would serve his clients by ensuring that the evidence he submits is in a form that can be considered by the fact-finder.

and (p) Exhibit T, grand jury testimony of Theresa Diaz. The motion to strike will be denied as to the above-listed items, and granted as to all other exhibits submitted by Plaintiffs.

**Motions for Summary Judgment:** The Court will first address Kenneth's motion for summary judgment. Plaintiffs have submitted no admissible evidence raising an issue of fact as to whether Kenneth was involved in the shooting at all, or was present at the scene at the time of the shooting. The only evidence is that Kenneth left the bar before Michael and Paul did, and did not arrive at the scene of the shooting until after Michael called him. There is no evidence that he participated at all in examining the scene of the shooting, or participated in any effort to distort the shooting scene in any way. Plaintiffs rely on the grand jury testimony of Theresa Diaz, who testified that Michael told her K.C. (Kenneth) was at the scene with him. This testimony does not raise any issue of fact with respect to Kenneth's liability for any tort alleged in this case, because there is no indication in Ms. Diaz's testimony as to when Kenneth was present. As far as the Court can determine from this testimony, Michael may have been referring to Kenneth being at the scene of the shooting after Michael called him, or virtually any other time. Plaintiffs speculate that Michael may have meant Kenneth was with him at the time of the shooting; however, this speculation is not sufficient to raise an issue of fact as to that issue. *See, e.g., Rice v. United States*, 166 F.3d 1088, 1092 (10th Cir.1999) (mere speculation, conjecture, or surmise, unsupported by evidence, is insufficient to resist summary judgment). Plaintiffs also point to the testimony of Sara Ortiz, that at some unspecified time the night of the shooting she saw two or maybe three unidentified males walking back and forth in an agitated manner, at the scene of the shooting. This evidence is patently insufficient to establish anything probative as to Kenneth, or anyone else for that matter. Since there is no evidence that Kenneth was involved in either the shooting or in the alleged cover-up of the

shooting, his motion for summary judgment will be granted.

The disposition of the summary-judgment motion filed by Michael is more problematic. It is undisputed that he was present at the scene of the shooting; that he and Paul had been drinking at the bar prior to the shooting, and had each consumed at least 6 or 7 beers; that he handed his gun to Paul when Paul asked to see it; that Paul then shot himself;[7] and that Michael still had an odor of alcohol about his person, noticed by two different police officers, when he was at the police station some time after the incident. In the Court's view, this evidence raises an issue of fact as to whether Michael handed a dangerous weapon to an intoxicated person, an act similar to those which have been held in other jurisdictions to constitute the tort of negligent entrustment. *See, e.g., Kitchen v. K-Mart Corp.*, 697 So.2d 1200 (Fla. 1997) (store sold firearm to man who was intoxicated; man shot his ex-girlfriend; store found liable for negligent entrustment); *Howard Brothers of Phenix City, Inc. v. Penley*, 492 So.2d 965 (Miss. 1986) (retailer provided pistol and ammunition to man who apparently was mentally deranged and under influence of alcohol and drugs; man held another customer hostage; court approved jury verdict finding retailer liable for negligent entrustment); *Bernethy v. Walt Failor's Inc.*, 653 P.2d 280 (Wash. 1982) (intoxicated husband obtained gun from gun shop and killed his wife with it; court held that seller of gun to intoxicated person may be subject to liability under principle set out in § 390 of Restatement (Second) of Torts); Restatement (Second) of Torts, § 390 (1965) (one who supplies a chattel for the use of a person whom the

---

[7] There is no admissible evidence that Michael was the person who actually pulled the trigger. This lack of evidence, of course, is the basis for Plaintiffs' constitutional and state-law spoliation-of-evidence claims--that the deliberate failure to preserve or collect evidence, and the deliberate alteration of evidence, prevents Plaintiffs from establishing that Paul did not shoot himself.

8

supplier knows to be likely, due to youth, inexperience, or otherwise, to use the chattel in a manner involving unreasonable risk of pysical harm to himself and others, is subject to liability for such physical harm); *cf. Goodell v. Nemeth*, 501 So.2d 36, 37 (Fla. App. 1986) (refusing to apply comparative negligence in situation where intoxicated victim shot himself with gun handed to him by defendant, because in Florida at the time a victim's own negligence negated the applicability of the comparative negligence doctrine; New Mexico has no such restriction); *but see Buczkowski v. McKay*, 490 N.W.2d 330 (Mich. 1992) (intoxicated customer purchased shotgun shells from store; store not liable when customer used shells to shoot third party).

The Court notes that New Mexico recognizes the doctrine of negligent entrustment, even in situations where the entrustee himself is the injured party. *See Sanchez v. San Juan Concrete Co.*, 943 P.2d 571, 576-77 (N.M.App. 1997) (entrustor of vehicle may be liable for harm to intoxicated entrustee, if entrustor acted recklessly or with gross negligence; court left open possibility that entrustor's simple negligence might also be sufficient to support liability for negligent entrustment). The Court also notes that neither party has presented any argument or authority on the issue of negligent entrustment in this case, as that doctrine might be applied in New Mexico to the facts of this case.[8] At this time, therefore, the Court will deny Michael's motion for summary judgment, since it appears a question of fact has been raised as to a possible claim of negligent entrustment, and

---

[8]Defendants' omission of any discussion of this issue is understandable, given Plaintiffs' failure to ever use the term "negligent entrustment" or to cite any legal authority concerning that concept. Plaintiffs' complaint, however, does contain allegations that state such a claim, in paragraphs 60 (alleging that Michael handed Paul the handgun despite observing Paul drink 6 or 7 Corona beers) and 64 (alleging that Michael acted recklessly or wantonly or with gross negligence when he handled the firearm). These allegations, combined with the general wrongful-death allegations, appear to be sufficient to state a negligent-entrustment claim.

the elements of such a claim in New Mexico are uncertain at this time. This ruling, however, should be considered preliminary in nature, and should not preclude the state court from deciding whether, under New Mexico law, such a claim does exist under the facts of this case.

The Court must also address the claim of spoliation of evidence raised by Plaintiffs. As to that claim, the following admissible evidence has been submitted: (a) the fact that Michael and Paul were the only ones at the scene of the shooting when it occurred; (b) one investigating officer's opinion that the scene "stinks" and did not look right; and (c) Mr. Renner's opinion, as a blood-spatter expert, as follows: the shooting did not occur while Paul was in the driver's seat, as Michael stated; instead, the door of the vehicle must have been open, Paul's head must have been at the level of the arm-rest and between the driver's seat and the open door when the shot was fired, and Paul must have been placed in the vehicle and the door closed after the shooting. The clear inference from this evidence is that Michael, the only person definitely at the scene, was the one who placed Paul back into the driver's seat after the shooting and closed the door. If Michael did do this, in an attempt to cover up the true facts surrounding the shooting and to avoid possible blame for the shooting, the elements of a claim for intentional spoliation of evidence might be present. *See Coleman v. Eddy Potash*, 905 P.2d 185, 189 (N.M. 1995) (elements of intentional spoliation claim include the existence of a potential lawsuit; defendant's knowledge of the potential lawsuit; destruction, mutilation, or significant alteration of potential evidence; intent on part of the defendant to disrupt or defeat the lawsuit; a causal relationship between the act of spoliation and the inability to prove the lawsuit; and damages), *overruled on other grounds, Delgado v. Phelps Dodge Chino, Inc.*, 34 P.3d 1148 (N.M. 2001). The Court will therefore deny the motion for summary judgment with respect to the spoliation-of-evidence claim.

10

**Exercise of Supplemental Jurisdiction:** Where a supplemental state-law claim raises a novel or complex issue of state law, this Court has discretion to decline to exercise jurisdiction over the claim. *Gold v. Local 7 United Food and Commercial Workers Union*, 159 F.3d 1307, 1310 (10th Cir. 1998); 28 U.S.C. § 1367(c). In doing so, the Court must take into account values of judicial economy, convenience, fairness, and comity. *Id.*

As the Court has intimated above, this case does raise a novel and complex issue of New Mexico law: the contours of a claim of negligent entrustment, where the entrustee is the injured party and was possibly injured as a result of his own voluntary intoxication. Decisions concerning the application of *Sanchez* to cases such as this, and answering the question left open in *Sanchez*, should properly be made in state court rather than this Court. In addition, the state-law spoliation-of-evidence case against Michael also raises novel issues of New Mexico law. To date, the few New Mexico cases concerning spoliation claims have dealt with situations in which a party failed to preserve property, rather than alleged instances of tampering with evidence, which is the claim against Michael in this case. *See Torres v. El Paso Elec. Co.*, 987 P.2d 386 (N.M. 1999); *Coleman, supra*. The question of whether the spoliation cause of action could apply to actions like Michael's is one that should be answered in the first instance in state court. This is especially so since, in *Torres*, the New Mexico Supreme Court pointed out that spoliation actions are not favored in other jurisdictions, and indicated that strict requirements would be applied to such claims.

As to the principles of judicial economy, fairness, and comity, they also militate in favor of allowing the state-law claims to be litigated in state court rather than this Court. As the Court has pointed out, there is already a state-court action pending involving the same parties and the same events as those present in this case. In fact, according to Plaintiffs, the state-court action is more

11

comprehensive than this federal-court lawsuit, because the state-court action was filed in time to preserve claims against the City of Gallup and its employees under the New Mexico Tort Claims Act. Allowing two separate lawsuits to proceed, where one comprehensive case could dispose of all of the state-law claims, and this Court can only address a portion of those claims, does not make sense. The Court will therefore decline to exercise supplemental jurisdiction over any of the state-law claims remaining in this case, and will dismiss those claims without prejudice.

**Conclusion:** Based on the foregoing, the Court will grant in part and deny in part Defendants' motion to strike the exhibits submitted by Plaintiffs in response to the motions for summary judgment. The Court will grant Kenneth Brandau's motion for summary judgment. The Court will deny Michael Brandau's motion for summary judgment but will limit Plaintiffs' claims to a negligent-entrustment claim and an intentional-spoliation-of-evidence claim. Finally, the Court will decline to exercise supplemental jurisdiction over those two claims and will dismiss them without prejudice so they may be pursued in the pending state-court action. The end result of this opinion and order will be that no state-law claims will remain pending in federal court, and the only federal claim remaining has been held in abeyance pending the outcome of the state-court proceedings.

## ORDER

A Memorandum Opinion having been entered this date, the Court hereby orders as follows: the motion to strike filed by Defendants (Doc. 70) is hereby GRANTED in part and DENIED in part; the motion for summary judgment filed by Defendant Kenneth Brandau (Doc. 62) is hereby GRANTED, and he is dismissed from this case as a Defendant; and the motion for summary judgment filed by Defendant Michael Brandau (Doc. 64) is hereby DENIED, although it is granted

as to any claims Plaintiffs might wish to raise other than the negligent-entrustment claim and the spoliation-of-evidence claim. In addition, the claims pending against Michael Brandau as a result of this opinion are hereby DISMISSED without prejudice, so they may be pursued in state court.

Dated this 10th day of January, 2003.

BRUCE D. BLACK
United States District Judge

**Attorneys:**
**For Plaintiff:**
William G. Stripp

**For Gallup Defendants**
James P. Lyle
**For Brandau Defendants**
Gregory V. Pelton